IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-00302-01-CR-W-ODS |
| ) | |
| ANTONIO CLEMMONS, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Pending before the Court is defendant's Motion to Suppress Illegally Obtained Evidence. For the reasons set forth below, the motion is denied.

I. INTRODUCTION

On September 14, 2004, the Grand Jury returned a one count indictment against defendant Antonio Clemmons charging that on November 12, 2002, defendant, having been convicted of a crime of violence punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, a Cobray, Model PM-11, 9mm pistol, Serial Number 940022835. The Grand Jury returned a Superseding Indictment against the defendant on May 10, 2005, which added an additional charge, Count Two, alleging that between October 20, 2002 and October 31, 2002, defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a Smith & Wesson, Model SW40V, .40 caliber semi-automatic pistol, Serial Number PAZ6099. The pending motion was filed prior to the Superseding Indictment and only addresses what is now Count One of the Superseding Indictment. (Tr. at 10-11)

On May 12, 2005, the undersigned conducted an evidentiary hearing on the pending motion

for suppression.[1] Defendant Clemmons was represented by Assistant Public Defender Anita Burns. The Government was represented by Assistant United States Attorney Paul S. Becker. The defense called Detective Donald Stanze of the Kansas City, Missouri Police Department as a witness. The government did not call any witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. Detective Donald Stanze works in the Gang Squad in the Narcotics and Vice Division of the Kansas City, Missouri Police Department and was involved in the investigation of the case involving Antonio Clemmons. (Tr. at 13-14)

2. Detective Stanze gave information he had obtained throughout his investigation into defendant's activities to Detective Darrell Reach to apply for a search warrant. (Tr. at 36)

3. The Affidavit/Application for Search Warrant provides in part:

> On 10-20-02, Officers with the Kansas City Missouri Police Department responded to 4820 E. 40th Terr., Kansas City, Jackson, County, Missouri on a reported shooting.
>
> Upon arrival officers located a victim with apparent gun shot wounds. It was later determined the victim had been shot a total of eight times. The victim was transported to a local emergency room where his injuries were determined to be non-life threatening.
>
> On 10-29-02 the victim gave a statement to Kansas City Missouri Police Department Robbery Detective Darrell Reach. The victim stated on 10-20-02 he was returning home from 39th St. and Jackson. The victim stated as he was walking up to his residence he had in his possession a cell phone, food and a Mac 11 handgun in a case. The victim stated he observed the suspect armed with a handgun step out of the bushes adjacent to the residence. The victim recognized the suspect as Antonio Clemmons B/M, 12-17-72, an acquaintance of 6-7 years. Clemmons stated "drop it." Clemmons and the

---

[1] The evidentiary hearing also included testimony on Defendant's Motion for Disclosure of Informant. (Doc. #20) That motion was ruled in a separate order.

victim struggled over the Mac 11 handgun. As they struggled Clemmons shot the victim in the leg with the handgun Clemmons arrived with. As the victim fell to the ground Clemmons grabbed the Mac 11 handgun. Clemmons then shot the victim three more times in the right leg and four times in the back with the handgun Clemmons arrived with. The suspect then fled in an unknown direction in possession of the Mac 11 handgun.

The victim was shown a photograph of Antonio Clemmons B/M, 12-17-72, who the victim positively identified as the shooter on 10-20-02.

Det. Stanze of the Gang Squad was contacted by a Confidential Source shortly after the incident occurred. The source advised Det. Stanze of the described incident and stated he/she believed the person responsible for the shooting has a street name of "Forty." Det. Stanze checked the alert system which revealed Antonio Clemmons B/M, 12-17-72 to have a moniker of "Forty." The Confidential Source further advised that Clemmons frequented an address determined to be 5723 E. 40th Terr, Kansas City, Jackson County, Missouri.

On 11-07-02, Det. Stanze was conducting surveillance on 5723 E. 40th Terr., Kansas City, Jackson County, Missouri. Det. Stanze observed two black males arrive in a red and grey Chevy Blazer. Det. Stanze observed a party he believed to be Clemmons exit the vehicle and enter the residence. Prior to any enforcement action could be taken Clemmons left the residence and left in the Chevy Blazer.

On 11-12-02, Det. Stanze was conducting surveillance on 5723 E. 40th Terr, Kansas City, Jackson County, Missouri. Det. Stanze observed a maroon Chrysler arrive to the residence. Det. Stanze observed a party he recognized as Clemmons exit the vehicle and enter the residence. Approximately 45 minutes later Det. Stanze observed an unknown black female and Clemmons re-enter the vehicle and leave the area. The 1910 Tactical Squad was in the area and stopped and detained the occupants. Clemmons was identified and placed under arrest for a pick-up order issued by the Robbery Unit.

Det. Stanze responded back to 5723 E. 40th Terr, Kansas City, Jackson County, Missouri to contact the responsible party for the residence. Myshonta Moore was contacted and stated the residence was in her custody and control. She did state that Clemmons frequents the residence and will stay over night 2-3 times a week. Myshonta Moore was advised of the on-going investigation and was asked to sign a Consent to Search Form. Myshonta Moore signed the Consent for the residence.

Upon conducting an initial search in the southwest bedroom, Det. Stanze

3

observed a Mac type handgun on a shelf of a closed cabinet. This handgun is similar in type and make as the one taken during the robbery. The residence was secured in anticipation of a search warrant.

(Affidavit/Application for Search Warrant, Exhibit 1)

4. On November 12, 2002, a search warrant was issued for 5723 E. 40th Terrace by Judge Gregory B. Gillis of the Circuit Court of Jackson, County, Missouri. (Tr. at 36; Exhibit 2)

5. The search warrant authorized the police to search for:

> Weapons and or firearms;
>
> Black hooded sweatshirt, and blue jeans
>
> Indicia of occupancy, residency, ownership, management and/or control of the premises described above including, but not limited to utility and telephone bills, canceled envelopes and keys;

(Search Warrant, Exhibit 2)

6. The area to be searched was described as:

> 5723 E. 40th Terr, Kansas City, Jackson County, Missouri. It is a grey with purple trim single family dwelling. Also to include a grey with purple trim detached garage located approximately ten feet to the south of the residence. It is the third (3rd) structure west of Topping located on the south side of 40th Terr. The numbers "5723" are displayed on the front of the structure.

(Search Warrant, Exhibit 2)

7. Detective Reach, Detective Stanze and other robbery detectives worked with the crime scene personnel to search the residence. (Tr. at 37) The gun was not recovered from the residence when officers first observed it during the consent search. (Tr. at 36) A member of the Crime Scene unit recovered the evidence from the residence. (Tr. at 36)

8. Detective Stanze testified that he executes many search warrants and that he is familiar with the search warrant and the items listed on the search warrant for which he was authorized to search. (Tr. at 38-39)

### III. DISCUSSION

4

Defendant Clemmons seeks to suppress "items of tangible evidence and all testimony relating to that evidence seized during a search of a residence on or about November 12, 2004, located at 5723 E. 40th Terrace, Kansas City, Missouri . . ." (Motion to Suppress Illegally Obtained Evidence, doc. #19, at 1) Defendant asserts that the Cobray PM-11 9mm firearm and a paper document bearing the name Antonio Clemmons were seized by police in violation of the Fourth Amendment.

First, defendant argues that the search warrant issued in the case is overbroad and does not describe with particularity the items to be seized. (Doc. #19 at 3)  Second, defendant argues the search warrant affidavit was insufficient to support a find of probable cause. (Doc. #19 at 4)

The government maintains that sufficient specificity was included in the warrant because the wording in the warrant did not give discretion to the officers executing the warrant. (Government's Response in Opposition to Defendant's Motion to Suppress Illegally Obtained Evidence, doc. # 22, at 4).  The government further contends that the search warrant affidavit provided the necessary probable cause to issue a valid search warrant. (Doc. #22 at 5)

    A.    <u>Particularity of Search Warrant</u>

Defendant alleges the search warrant lacked sufficient particularity. The Fourth Amendment provides that no search warrant shall issue without probable cause "supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.  To satisfy the particularity requirement, a description in a warrant must be sufficiently definite to enable the search officers to "reasonably ascertain and identify the ... objects to be seized." <u>United States v. Coppage</u>, 635 F.2d 683, 686-87 (8th Cir. 1980)(citing <u>Steele v. United States</u>, 267 U.S. 498, 503-04 (1925)).

5

Defendant finds fault with the warrant's description of: "indicia of occupancy, residency, ownership, management and/or control of the premises described above including, but not limited to utility and telephone bills, cancelled envelopes and keys." (Doc. #19 at 3) Where a precise identity of goods cannot be ascertained at the time the search warrant is issued, a description of a generic class of items is sufficient if it provides a guide to the exercise of informed discretion of the officers executing the warrant. See United States v. Wayne, 903 F.2d 1188, 1195 (8th Cir. 1990); United States v. LeBron, 729 F.2d 533, 536 (8th Cir.1984). The description of items to be seized as set forth in the search warrant is sufficient. See also United States v. Krasaway, 881 F.2d 550, 553 (8th Cir. 1989)(warrant containing description "Indicia of occupancy, residency, or payments of utilities and rent" among other generic class descriptions is not an invalid general warrant).

  B.  <u>Probable Cause for the Search Warrant</u>

Defendant alleges the search warrant lacked probable cause. Whether probable cause exists depends upon the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause for the issuance of a warrant exists if there are facts sufficient to create a fair probability that contraband or evidence of a crime will be found in the place to be searched. Id.; United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000). The Government contends the facts set forth in the affidavit in support of the search warrant set forth probable cause.

Detective Darrell Reach prepared the affidavit in support of the search warrant which included information he had obtained regarding the defendant as well information obtained by Detective Stanze and provided to him. (See, Findings of Fact #2, supra) The affidavit states that the victim of a robbery and shooting which occurred on October 20, 2002, identified Antonio Clemmons as the man who robbed and shot him. The victim told Detective Reach that he had known defendant

6

Clemmons for 6 or 7 years. The victim reported that Clemmons robbed him of his Mac 11 handgun. Shortly thereafter, a confidential source told Detective Stanze that a man with the street name of "Forty" was responsible for the October 20, 2002 robbery and shooting. Detective Stanze checked the alert system and determined that defendant Clemmons has a moniker of "Forty." The confidential informant told Detective Stanze that Clemmons frequented a residence determined to be 5723 E. 40th Terrace. Detective Stanze observed Clemmons enter and exit the residence on two occasions. He obtained consent to search the residence from Myshonta Moore, who stated that the residence was in her custody and control. She stated that Clemmons "frequents" the residence and will stay over night 2 to 3 times per week. During the search, Detective Stanze observed a Mac type handgun, similar in type and make to the one taken during the October 20, 2002 robbery, on a shelf in a closed cabinet.

Defendant argues that there was not reliable information to indicate that the defendant resided at or kept personal belongings at the residence. The information provided by a confidential informant and supplemented by Detective Stanze's surveillance of the residence indicated that Clemmons frequented the residence. This was further supported by Ms. Moore, who stated she was in custody and control of the residence frequented by Clemmons. Moreover, a consent search of the residence yielded the existence of a firearm similar to the one Clemmons was alleged to have stolen in the October 20, 2002 robbery.

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstance set forth in the affidavit before [it], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability the contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding" that probable cause existed.

7

Gates, 462 U.S. at 238-39.  Taken together, all of the facts provided sufficient probable cause for the issuance of the warrant.

      C.      <u>Leon Good Faith Exception</u>

While the Court is of the view that more than sufficient probable cause existed for the issuance of the warrant, even if the warrant lacked probable cause, the search would be valid under the <u>Leon</u> good faith exception.  The <u>Leon</u> good faith exception applies if it appears the officer executing the warrant was acting in "objectively reasonable reliance" on a warrant issued by a neutral judge.  <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984); <u>United States v. Murphy</u>, 69 F.3d 237, 241 (8th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1153 (1996).  In this case, Judge Gillis found probable cause for the issuance of the warrant.

The Eighth Circuit, relying on the United States Supreme Court holding in <u>United States v. Leon,</u> has repeatedly held that:

> Ordinarily, a police officer cannot be expected to question a judge's probable cause determination.  Suppression is an appropriate remedy if the judge, in issuing the warrant, was misled by information in the affidavit that the affiant knew or would have known it was false except for the affiant's reckless disregard for the truth.  Evidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause.

<u>Murphy</u>, 69 F.3d at 241 (quoting <u>United States v. Gibson</u>, 928 F.2d 250, 253-54 (8th Cir. 1991)). Stated another way, there are four "exceptions" wherein reliance upon an invalid search warrant is per se unreasonable: (1) the affiant misled the judge by including information in the affidavit that the affiant knew was false or would have known was false, except for a reckless disregard for the truth; (2) no reasonably well-trained officer could rely on the warrant, as it was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; (3) the judge wholly abandoned his neutral and detached position and acted as a

8

rubber stamp; or (4) the warrant itself is so facially defective that the executing officer cannot presume its validity. See United States v. Leon, 468 U.S. 897, 922-23 (1984).

Relying on the recent decision in Groh v. Ramirez, 540 U.S. 551 (2004), defendant argues that the warrant is so facially defective that the good faith exception cannot apply here. In the Groh case, however, the warrant did not describe the items to be seized at all. Id. at 551. In Groh, in that portion of the warrant that called for a description of the person or property to be seized, the ATF agent mistakenly typed a description of the home to be searched rather than listing the firearms which were the subject of the search. That is not the case here. Here, the warrant described the items to be seized and was not defective on its face. Therefore, the Leon good faith exception applies.

## IV. CONCLUSION

For the reasons set forth above, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant's Motion to Suppress Illegally Obtained Evidence (doc. #19).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                 */s/ Sarah W. Hays*
                                                      SARAH W. HAYS
                                 UNITED STATES MAGISTRATE JUDGE